NO. 07-11-0068-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 16, 2011
_____

STEPHANIE A. HRYCYK AND HRYCYK FINANCIAL LLC,

Appellants

v.

NORRIS DEAN BUTLER AND JOANN BUTLER,

Appellees
_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 63,035-B; HONORABLE JOHN B. BOARD, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

Stephanie A. Hrycyk and Hrycyk Financial, LLC (collectively referred to as Hrycyk) appeal from an order denying their motion to compel arbitration in a lawsuit filed against them by Norris Dean Butler and Joann Butler (the Butlers). That lawsuit relates to financial advice provided by Hrycyk and the Butlers' reliance upon it to acquire various investments. We affirm the order for the simple reason that there is no

_____
[1]John T. Boyd, Senior Justice, sitting by assignment.

evidence illustrating that the arbitration clauses at issue encompass disputes between these parties.

According to the record before us, there are four pertinent agreements involved. The first was executed in 1999 between the Butlers and Hrycyk and specified the nature of their arrangement. It did not contain an arbitration clause. The second and third agreements were executed in 1999 and 2002, respectively, and purport to be contracts between the Butlers and an entity named H. Beck, Inc. Additionally, the signatures appearing on them were those of the Butlers, as investors, and Stephanie Hrycyk under the label "Registered Representative." The term "registered representative" was not defined in the document.[2] Nor was the nature of the relationship contemplated by that term discussed. Simply put, whether Hrycyk was, and had the legal duties and authority implicit in being, an employee, partner, agent, or the like of H. Beck is unknown. Nor is it known whether Hrycyk's status as a purported "registered representative" rendered her nothing more than an independent contractor or someone who merely referred business to Beck. Nonetheless, the agreements contained arbitration clauses stating that "any controversy which may arise between You and *H. Beck, Inc.* concerning any transaction or the construction, performance, or breach of this Agreement or any other agreement between us . . . shall be determined by arbitration." (Emphasis added).

The final, and rather illegible, agreement in question apparently was signed by the Butlers in 2007. Also appearing on it are two other signatures, neither of which can be read nor interpreted as belonging to either Stephanie Hrycyk or Hrycyk Financial. However, a closing paragraph refers to "Emmett A Larkin, Company, Inc." The one

---

[2]The same term appeared in the original contract signed by the Butlers and Hrycyk in 1999 and was also undefined and unexplained there.

above it also mentions arbitration. Through it, the Butlers apparently agreed that "all controversies which may arise between ME/US or between ME/US and the organization that has introduced MY/OUR account carried by you, including but not limited to those involving any transaction over the construction, performance, or breach of this or any other agreement between us . . . shall be determined by arbitration." We also note that the record holds no evidence of who "introduced" the Butlers to Larkin.

Next, Hrycyk moved the trial court to enforce the aforementioned arbitration clauses, and the court held a hearing on the motion. No witnesses were presented at that hearing, however. Instead, legal counsel simply argued their respective positions. And, as we all know, their arguments generally constitute evidence of nothing, despite their eloquence. *See Tex. Dep't of Public Safety v. Mendoza,* 952 S.W.2d 560, 564 (Tex. App.–San Antonio 1997, no writ) (holding that argument of legal counsel at a hearing is not evidence). Yet, Hrycyk did accompany her motion with her affidavit. And, in that instrument she authenticated the aforementioned Beck contracts, stated that she "was a registered representative of H. Beck Inc." at the time of their execution, attempted to authenticate the 2007 agreement as one between the Butlers and "Gramercy Securities Inc." (an entity unmentioned in the particular document), stated that she was a "registered representative of Gramercy," stated that the contracts with the arbitration clauses "were made in consideration of Hrycyk . . . providing services to ..." the Butlers, acknowledged providing investment advising services to the Butlers since 1999, indicated the nature of investments acquired by the Butlers and their geographic location, and concluded by stating that Beck and Gramercy were "both broker-dealers with their primary places of business outside of the state of Texas."

3

Having received this affidavit and argument of counsel, the trial court denied the motion before it.

Whether a trial court errs in refusing to order arbitration depends on whether it abused its discretion. *Torster v. Panda Energy Mgmt., L.P.,* No. 07-10-00442-CV, 2011 Tex. App. Lexis 1628, at *5 (Tex. App.–Amarillo March 7, 2011, no pet. h.) (not designated for publication); *Sidley, Austin, Brown, & Wood, L.L.P. v. J.A. Green Dev. Corp.,* 327 S.W.3d 859, 863 (Tex. App.–Dallas 2010, no pet.) (stating that we apply a no evidence standard to the trial court's factual determinations and a *de novo* standard to the legal determination which is the same as a standard of abused discretion). A trial court abuses its discretion when its decision deviates from guiding rules and principles and is otherwise arbitrary, capricious, and unreasonable. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). One of those guiding rules and principles obligates the party seeking arbitration to establish the existence of a valid agreement requiring arbitration and encompassing the litigants and dispute in question. *In re Bank One, N.A.,* 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding). It is compliance with the latter rule that we find missing here.

As can be seen from what we described above, the arbitration clauses are in contracts between the Butlers and third parties. Additionally, none expressly mention disputes with Hrycyk as being encompassed by the clauses. Despite that, Hrycyk seeks to benefit from them through her supposed relationship with those third parties. But again, there is no evidence in the record before us of any such relationship. Moreover, the conclusory allegation about being their "registered representative" fails to fill the void. Such allegations not only lack probative value, *City of San Antonio v.*

*Pollock,* 284 S.W.3d 809, 816 (Tex. 2009) (stating that conclusory allegations have no probative value), but also leave one guessing at the nature of the legal relationship, if any, contemplated. And, we are not authorized to engage in such guessing.

Nor may we simply assume that Hrycyk was the party who "introduced" the Butlers to Larkin or Gramercy for purposes of the arbitration clause in the 2007 contract. And given that Gramercy is nowhere mentioned in the 2007 contract and the lack of any evidence explaining whether Gramercy succeeded to Larkin's rights in the agreement, we would be hard pressed to conclude that Hrycyk's status as a "registered representative" of Gramercy somehow entitles her to contractual rights granted Larkin.

Simply put, we have before us 1) arbitration clauses that expressly encompass entities other than Hrycyk and 2) no probative evidence that Hrycyk has any type of actual relationship to those entities. Given this, we cannot say that the burden to prove the applicability of the clauses was met. Thus, the trial court did not abuse its discretion in view of the record before us.

The order denying arbitration is affirmed.


Brian Quinn
Chief Justice


5