

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-178-CV**


WEE TOTS PEDIATRICS, P.A.                                    APPELLANT

V.

ADUNNI MOROHUNFOLA, M.D.                                      APPELLEE

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------
AND
------------

**NO. 2-08-246-CV**

IN RE WEE TOTS PEDIATRICS, P.A.                               RELATOR

------------

ORIGINAL PROCEEDING

------------
**OPINION**
------------

# I. INTRODUCTION

This case involves an arbitration dispute between Wee Tots Pediatrics, P.A. and Adunni Morohunfula, M.D. Wee Tots filed a motion to compel arbitration of certain counterclaims and third-party claims and to abate the proceedings on the counter-claims and third party claims pending arbitration. The trial court denied Wee Tots's motion; the trial court's denial order did not state a reason for the denial, and the court did not make any findings or conclusions in the order or in a separate document.

Wee Tots thereafter filed an interlocutory appeal, cause no. 2-08-178-CV, and a mandamus proceeding, cause no. 2-08-246-CV, challenging the trial court's denial of its motion to compel arbitration. We consolidated these proceedings and requested a response from Dr. Morohunfula in the mandamus proceeding.[1]

We conditionally grant Wee Tots's requested relief in the mandamus proceeding because we hold that the trial court abused its discretion by denying

---

[1] *See In re Valero Energy Corp.*, 968 S.W.2d 916, 916–17 (Tex. 1998) (orig. proceeding) ("We note for future cases that the better course of action for a court of appeals confronted with an interlocutory appeal and a mandamus proceeding seeking to compel arbitration would be to consolidate the two proceedings and render a decision disposing of both simultaneously, thereby conserving judicial resources and the resources of the parties.").

Wee Tots's motion to compel arbitration under the Federal Arbitration Act ("FAA"). We dismiss the appeal as moot.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Dr. Morohunfola signed an "Associate Physician Employment Agreement" ("Agreement") with Wee Tots that set forth various terms and conditions, among other things, of her employment with Wee Tots. The agreement lasted for three years—from September 1, 2003, to August 31, 2006.

Section 4.03 of the Agreement, "Restrictive Covenant," provides that Dr. Morohunfola agrees to the covenant not to compete set forth in Schedule D. The covenant in Schedule D provides in part the following:

> [Dr. Morohunfola] agrees that during [her] employment with [Wee Tots] and for a period of twelve (12) months after the date [of] cessation of [Wee Tots's] employment for any reason, [Dr. Morohunfola] will not engage in or become associated with, directly or indirectly, a pediatric group practice, physician-hospital organization, managed care entity, or other health care provider . . . .

The covenant not to compete contains a geographic limitation limiting the covenant to a twenty-five mile radius of the site where Dr. Morohunfola practiced.

Section 4.05 of the Agreement, "Confidentiality of Information," is a covenant apparently intended to protect Wee Tots's confidential and proprietary information and trade secrets. The provision states that Dr. Morohunfola

3

"agrees not to disclose such Confidential Information to others at any time, except as expressly required by [Wee Tots] or by law."

Section 3.01, "Compensation," provides that Wee Tots shall pay Dr. Morohunfola compensation set forth in Schedule A. In addition to base compensation, Schedule A provides that Dr. Morohunfola is "entitled to annual *incentive compensation* based upon the collections actually received by [Wee Tots] for services rendered personally by [Dr. Morohunfola]." [Emphasis added.]

Section 7.08, "Arbitration," provides in part as follows:

> *All controversies which may arise between the parties, including but not limited to any dispute* arising over the terms and conditions of this Agreement or *in any manner relating to this Agreement*, or any other agreement between the parties, whether entered into prior to or subsequent to the date hereof, which the parties are unable to resolve informally between themselves or by mediation, *shall be submitted upon the written demand of either party to arbitration under the Employment Arbitration Rules of the American Arbitration Association ("AAA") in effect at the time of the arbitration demand.*

> *The parties expressly agree that this arbitration clause shall **not** apply [to] a dispute over any right of the Association to seek an injunction or other relief in Court as referred to in Sections 4.03, 4.05 and Schedule D attached hereto.* [the covenant not to compete and confidentiality agreement]

> *Physician acknowledges that the duties of Physician's employment with the Association affect interstate commerce* in that Physician will be, among other things, dispensing medications, devices and other material manufactured out of state to patients in

4

Texas, some of whom may travel from other states before being treated. . . .

All arbitration proceedings shall be administered by the AAA and be held in the AAA's Dallas, Texas office. . . . [Emphasis added.]

Wee Tots's first amended petition alleges that Dr. Morohunfola worked for Wee Tots at its Arlington location until the Agreement expired and that it subsequently became aware that she joined Tots and Tykes Pediatrics, P.A., another pediatric practice in Tarrant County. Wee Tots alleged that on November 26, 2006, and December 3, 2006, an advertisement was published in the Arlington edition of the Fort Worth Star-Telegram for Tots and Tykes Pediatrics, P.A. that included Dr. Morohunfola's name. It further alleged that Dr. Morohunfola "is engaging in a pediatric practice within the geographic limitation set forth in Schedule D to the Employment Agreement, and is, in fact, actively soliciting [Wee Tots's] patients in the Arlington area in direct violation of the Employment Agreement." Wee Tots alleged causes of action for breach of the covenant not to compete, breach of the confidentiality covenant, tortious interference with existing contractual and business relations, and civil conspiracy.

Dr. Morohunfola's second amended counter-petition, filed on October 17, 2008, alleged causes of action against Relator for breach of contract, breach

5

of fiduciary relationship, fraud, and fraud in the inducement. All of the claims implicate in part the "incentive compensation" provision in Schedule A of the Agreement.[2]

According to Wee Tots, the parties unsuccessfully mediated their disputes on October 10, 2007. On October 19, 2007, Wee Tots filed its motion to compel arbitration of Dr. Morohunfola's counterclaims and to abate proceedings of the counterclaims pending arbitration. The trial court denied Wee Tots's motion on April 10, 2008. Wee Tots filed its notice of interlocutory appeal on April 30, 2008, and this original proceeding on June 11, 2008.

### III. MANDAMUS PROCEEDING JURISDICTION

In Texas, a trial court's denial of arbitration under the FAA may be challenged only by mandamus and not by interlocutory appeal. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 779 (Tex. 2006) (orig. proceeding). If the arbitration agreement is governed by the Texas General Arbitration Act ("TGAA") rather than the FAA, interlocutory appeal is the proper method for seeking relief from an order denying a motion to compel arbitration. Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (Vernon 2005). But a party may seek to enforce an arbitration agreement under both the FAA and TGAA if the

---

[2] The counterpetition also lists three third-party defendants.

6

agreement does not say whether the FAA or TGAA applies. *D. Wilson Constr.*

*Co.*, 196 S.W.3d at 778–79.

The FAA governs a contract evidencing a transaction involving interstate

commerce if the contract contains a written arbitration provision. *In re Scott,*

100 S.W.3d 575, 579 (Tex. App.—Fort Worth 2003, orig. proceeding).[3]  As

defined by the FAA, "interstate commerce" is not limited to the interstate

shipment of goods, but includes all contracts "relating to" interstate commerce.

*In re FirstMerit Bank,* 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding); *Lost*

*Creek Mun. Util. Dist. v. Travis Indus. Painters, Inc.,* 827 S.W.2d 103, 105

(Tex. App.—Austin 1992, writ denied).  Further, the word "involving" in the

FAA is broad and the functional equivalent of "affecting," signaling Congress's

intent to exercise its Commerce Clause power to the full.  *Allied-Bruce Terminix*

*Cos. v. Dobson,* 513 U.S. 265, 272–74, 276–78, 115 S. Ct. 834, 839, 841

---

[3] The FAA provides:

> A written provision in . . . a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration any existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (West 1999).

7

(1995); *Palm Harbor Homes, Inc. v. McCoy,* 944 S.W.2d 716, 719 (Tex. App.—Fort Worth 1997, orig. proceeding).

Here, the Agreement does not specifically state that it is governed by the FAA, but Wee Tots directs us to Dr. Morohunfola's express acknowledgment in the arbitration portion of the Agreement that the duties associated with her employment "affect interstate commerce" and that she will be, among other things, "dispensing medications, devices[,] and other material manufactured out of state to patients in Texas, some of whom may travel from other states before being treated." As evidenced by her signature at the conclusion of the Agreement, Dr. Morohunfola agreed to this provision, which is a reference unambiguously implicating the FAA. Dr. Morohunfola does not challenge the application of the FAA to the Agreement. Accordingly, we hold that the dispute between the parties involves arbitration under the FAA. *See FirstMerit Bank,* 52 S.W.3d at 753.

## IV. WEE TOTS ENTITLED TO ARBITRATION UNDER FAA

In its first issue, Wee Tots argues that the trial court abused its discretion by denying its motion to compel arbitration because Dr. Morohunfola's counterclaims fall within the express scope of the Agreement's arbitration clause.

Federal and state law strongly favor arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S. Ct. 927, 941–42 (1983); *Prudential Secs., Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex. 1995) (orig. proceeding). Section 2 of the FAA "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Perry v. Thomas*, 482 U.S. 483, 489, 107 S. Ct. 2520, 2525 (1987). The FAA establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or a defense to arbitrability. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S. Ct. at 941.

A party attempting to compel arbitration must establish a valid arbitration agreement whose scope includes the claims asserted. *In re Dillard Dep't. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding). Under the FAA, an agreement to arbitrate is valid if it meets the requirements of the general contract law of the applicable state. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding). If the movant establishes that an arbitration agreement is subject to the FAA and governs a dispute, the burden shifts to the party opposing arbitration to prove her

9

defenses to arbitration. *Id*. at 607. If the party opposing arbitration fails to prove her defenses, the trial court has no discretion but to compel arbitration and to stay its own proceedings. *FirstMerit Bank,* 52 S.W.3d at 754. When a trial court erroneously denies a party's motion to compel arbitration under the FAA, the movant has no adequate remedy at law and is entitled to a writ of mandamus. *Id.* at 753.

Here, the Agreement—which is governed by the FAA and signed by Dr. Moronunfola—contains an arbitration clause providing in relevant part as follows:

> *[a]ll controversies which may arise between the parties*, *including but not limited to any dispute arising* over the terms and conditions of this Agreement or *in any manner relating to this Agreement*, . . . which the parties are unable to resolve informally between themselves or by mediation, *shall be submitted upon the written demand of either party to arbitration* . . . ." [Emphasis added.]

Dr. Morohunfola's breach of contract, breach of fiduciary relationship, fraud, and fraud in the inducement counterclaims fall within the broad scope of the arbitration agreement requiring arbitration of "all controversies which may arise between the parties," including disputes arising "in any manner" relating to the Agreement. Nor do Dr. Morohunfola's counterclaims fall within the exclusionary portion of the arbitration clause, which provides that the "arbitration clause shall **not** apply [to] a dispute over any right of the

10

Association to seek an injunction or other relief in Court as referred to in Sections 4.03, 4.05 and Schedule D attached hereto," because the counterclaims do not concern the covenant not to compete and confidentiality portions of the Agreement. Accordingly, we hold that Wee Tots established a valid arbitration agreement subject to the FAA and covering Dr. Moronhunfola's counterclaims.

Dr. Morohunfola argues that the trial court did not err by denying Wee Tots's motion to compel arbitration because the claims that Wee Tots seeks to litigate are the same as the claims that Wee Tots seeks to arbitrate. Consequently, according to Dr. Morohunfola, the exact same issues cannot be properly decided in two forums because this might "require two distinct forums to decide at least some of the exact issues separately." Wee Tots's claims for breach of the covenant not to compete and breach of the confidentiality agreement are not the same claims as Dr. Morohunfola's claims for breach of contract for failing to pay her "incentive compensation," breach of fiduciary duty, fraud, and fraud in the inducement. They are entirely different causes of action, and a cursory reading of the parties' respective pleadings demonstrates that Dr. Morohunfola's counterclaims, which center largely around the issue of Wee Tots's alleged non-payment of "incentive compensation," do not implicate much, if any, of the same facts forming the basis of Wee Tots's breach of the

11

covenant not to compete and breach of the confidentiality agreement claims, which focus on Dr. Morohunfola's alleged conduct.

To the extent a situation might arise as contemplated by Dr. Morohunfola in which "two distinct forums [will be required] to decide at least some of the same issues separately," we observe that Dr. Morohunfola signed and agreed to the Agreement as written, including the arbitration clause. "[A] person who signs a contract must be held to have known what words were used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract." *Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 570 (Tex. App.—San Antonio 2004, no pet); *see also Wade v. Austin*, 524 S.W.2d 79, 86 (Tex. Civ. App.—Texarkana 1975, no writ) ("It has accordingly been said that, almost without limitation, what the parties agree upon is valid, the parties are bound by the agreement they have made, and the fact that a bargain is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily."). Dr. Morohunfola is consequently bound by the terms of the arbitration clause that she agreed to, including the express terms excluding from arbitration any claims involving the covenant not to compete and the confidentiality agreement, and she may not now attempt to disavow this portion of the agreement because her claims, but not Wee Tots's excluded claims, are subject to arbitration, because

12

she is not happy with her bargain, or because of the possibility of issues overlapping to some extent in different "forums." *Cf.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 105 S. Ct. 1238, 1241 (1985) ("We agree . . . that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.").[4]

Relying on the factors set forth in *Perry Homes v. Cull*, Dr. Morohunfola additionally argues that the trial court did not err by denying Wee Tots's motion to compel arbitration because, according to the totality of the circumstances of the case, Wee Tots waived its right to arbitration. 258 S.W.3d 580, 591–92 (Tex. 2008).

The test for determining waiver of arbitration is two pronged: (1) did the party seeking arbitration substantially invoke the judicial process, and (2) did the opposing party prove that it suffered prejudice as a result. *Nw. Constr. Co.,*

---

[4] Dr. Morohunfola's reliance on *Vireo, P.L.L.C. v. Cates*, 953 S.W.2d 489, 494 (Tex. App.—Austin 1997, pet. denied), is also unpersuasive because this court has previously declined to follow that case. *See Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 704 (Tex. App.—Fort Worth 2006, pet. denied) (criticizing *Vireo* majority for its failure to recognize that the TGAA was enacted to abrogate the common law "right of election" doctrine with regard to waiver).

*Inc., v. Oak Partners, L.P.*, 248 S.W.3d 837, 848 (Tex. App.—Fort Worth 2008, pet. denied). Waiver should be decided on a case-by-case basis, and the court should look to the totality of the circumstances. *Perry Homes*, 258 S.W.3d at 591. Factors significant to the issue of waiver include when the movant knew of the arbitration clause, how much discovery has been conducted, who initiated the discovery, whether it related to the merits rather than arbitrability or standing, how much of it would be useful in arbitration, and whether the movant sought judgment on the merits. *Id*. at 591.

In this case, Wee Tots served nineteen interrogatories, sixteen requests for admissions, and thirty-nine requests for production before seeking arbitration, but the discovery does not focus solely on the non-arbitrable claims. Wee Tots also filed a partial motion for summary judgment, but it sought judgment only on its claim for breach of the covenant not to compete, not on its arbitrable claims. Dr. Morohunfola acknowledges that a large portion of the discovery would be useful in arbitration. And Wee Tots claims that it sought to compel arbitration only after mediation failed. We resolve any doubts that we have regarding waiver in favor of arbitration. *See Oak Partners*, 248 S.W.3d at 847. Considering the above in addition to the totality of the circumstances, we disagree that Wee Tots waived its right to compel arbitration because it has not substantially invoked the judicial process with regard to its

claims that fall outside of the arbitration exemption clause of the Agreement (tortious interference with existing contractual and business relations and civil conspiracy).

In light of the above, we hold that the trial court had no discretion but to compel arbitration of Dr. Morohunfola's counterclaims and the third-party claims. *See FirstMerit Bank,* 52 S.W.3d at 754. Accordingly, we sustain Wee Tots's first issue.

## V. ABATEMENT

In its second issue, Wee Tots argues that the trial court abused its discretion by denying Wee Tot's motion to abate the arbitrable claims and stay the same claims in the trial court pending arbitration.

9 U.S.C.A. § 3 provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3. Both the federal and Texas arbitration acts require courts to stay litigation of issues that are subject to arbitration. *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding).

15

Here, having determined that the trial court abused its discretion by denying Wee Tots's motion to compel arbitration, the trial court also abused its discretion by denying the portion of Wee Tots's motion seeking to abate the arbitrable claims. We therefore sustain Wee Tots's second issue.

## VI. CONCLUSION

A party denied the right to arbitrate under the FAA has no adequate remedy by appeal and is entitled to mandamus relief. *AdvancePCS Health, L.P.*, 172 S.W.3d at 608. We conclude that the trial court clearly abused its discretion by denying Wee Tots's motion to compel arbitration of counterclaims and third-party claims and to abate the proceedings on the counter-claims and third party claims pending arbitration. We conditionally grant mandamus relief. We have confidence that the trial court will vacate its prior order and will grant Wee Tots's motion to compel arbitration of counterclaims and third-party claims and to abate the proceedings on the counter-claims and third party claims pending arbitration. The writ of mandamus will issue only if the trial court fails to do so. Wee Tots's interlocutory appeal is dismissed as moot. *See* Tex. R. App. P. 43.2(f); *D. Wilson Constr. Co.*, 196 S.W.3d at 784.


DIXON W. HOLMAN
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

16

DELIVERED:  September 18, 2008